**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

LUIS ANDRE EPHOR ISIDOR,

Petitioner,

v.

MICHAEL NESSINGER; DAVID T. WESLING, *Boston Field Office Director Boston Field Office, U.S. Immigration and Customs Enforcement*; DAVID VENTURELLA, *Acting Director Immigration and Customs Enforcement*, MARKWAYNE MULLIN, *U.S. Secretary of Homeland Security*; TODD BLANCHE, *Attorney General of the United States.*

Respondents.

C.A. No. 26-727-MSM-AEM

**ORDER**

MARY S. MCELROY, United States District Judge.

Before the Court is Luis Andre Ephor Isidor's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. The Petitioner is a native of Haiti who entered the United States around June 1998 on a visitor visa and has remained in the United States continuously since that time, despite having been subject to a final order of removal since 2007. *See* ECF No. 4-3 at 3. He claims that his current detention, which began when U.S. Immigration and Customs Enforcement ("ICE") officers arrested him on September 29, 2026, violates his rights under the Due Process Clause of the Fifth Amendment. Respondents disagree, arguing that the

Petitioner's detention is authorized by 8 U.S.C. § 1231 and is otherwise lawful. *See* ECF No. 4. For the following reasons, the Court agrees with the Petitioner, and GRANTS his Petition for Writ of Habeas Corpus.

Section 1231 of the Immigration and Naturalization Act ("INA") authorizes the Department of Homeland Security ("DHS") to detain noncitizens who have been "ordered removed." *Johnson v. Arteaga Martinez*, 596 U.S. 573, 575 (2022) (quoting 8 U.S.C. § 1231(a)). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Id.* (quoting 8 U.S.C. § 1231(a)(1)(A)). The removal period begins on the latest of three dates: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order"; or (3) "if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). "During the removal period, detention is mandatory." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

Once the removal period expires, the Government "may" detain only four categories of noncitizens: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). Unlike other provisions of the INA, Section 1231(a) does not

require the Government to provide a noncitizen with a bond hearing before an Immigration Judge where the Government bears the burden of justifying the noncitizen's continued detention. *Id.* at 581; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021). Instead, ICE officials themselves are responsible for making decisions regarding continued detention and supervised release.

Two regulations primarily govern their decision-making: 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *4 (D. Md. Aug. 25, 2025). The procedures set forth under these regulations "are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Bulle v. Wesling*, No. 26-CV-019-JJM-AEM, 2026 WL 183840, at *2 (D.R.I. Jan. 23, 2026). "Therefore, ICE violates a noncitizen's due process rights when the agency re-detains them and fails to comply with these revocation procedures." *Id.*

The governing regulations differ in a few important respects. 8 C.F.R. § 241.4 specifically applies to noncitizens who are detained beyond the 90-day removal period (also known as the "post-removal-period"). *Guzman Chavez*, 594 U.S. at 529 (citing 8 C.F.R. § 241.4). Under this provision, if ICE wishes to continue detaining a noncitizen beyond the post-removal-period, then ICE must conduct an individualized "custody review." *Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *2 (D.R.I. Nov. 26, 2025) (citing 8 C.F.R. § 241.4). ICE must follow several key procedures, including: (1) conducting the initial custody review "prior to the

expiration of the removal period" or "as soon as possible thereafter," *id.* (citing 8 C.F.R. §§ 241.4(h)(1), (k)(1)(i), (k)(2)(iv)); (2) "provid[ing] written notice to the detainee about 30 days in advance of the pending records review" so that they may submit information in support of their release, *id.* (citing 8 C.F.R. § 241.4(h)(2)); and (3) "forward[ing] by regular mail a copy of any notice or decision that is being served" on the noncitizen to the noncitizen's attorney, if they are represented, *id.*

8 C.F.R. § 241.13 establishes "special review procedures" for a noncitizen detained under Section 1231(a) after the removal period lapses who "has provided good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). The procedures begin once the noncitizen "submits a written request providing reasons why there is no significant likelihood the Government will remove him or her." *E.M.M. v. Almodovar*, No. 25-CV-08212 (MMG), 2025 WL 3077995, at *3 (S.D.N.Y. Nov. 4, 2025) (citing 8 C.F.R. § 241.13(d)(1)). "The written request triggers a formal review by the Headquarters Post-Order Detention Unit ('HQPDU')." *Id.* (citing 8 C.F.R. §§ 241.13(e), (f)). "Once the review concludes, the HQPDU issues a 'written decision' regarding 'whether there is a significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future under the circumstances.'" *Id.* (quoting 8 C.F.R. § 241.13(g)). "If that likelihood is low or not significant," then the noncitizen is released subject to an Order of Supervision. *Id.* (citing 8 C.F.R. § 241.13(h))

Here, the Respondents have submitted no evidence that the Petitioner falls within one of the four categories of noncitizens described in 8 U.S.C. § 1231(a)(6) or

that they complied with their own regulations under either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13 before detaining him. Instead, they primarily argue that the Petitioner's current detention does not violate his due process rights because it has not yet exceeded six months, which the Supreme Court found to be a "presumptively reasonable" in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). But unlike *Zadvydas*, which involved the reasonableness of a noncitizen's continued detention immediately following his ordered removal, this case involves the reasonableness of the Petitioner's sudden detention *nineteen years* after his final order of removal. The six-month presumption—to the extent that it could be construed as superseding the due process protections provided by ICE's own regulations—is inapplicable here. *Cf. Nguyen v. Lyons*, No. 25-CV-631-MSM-PAS, 2026 WL 125093, at *2 (D.R.I. Jan. 16, 2026); *Bulle*, 2026 WL 183840, at *5; *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *6 (D.R.I. Jan. 2, 2026).

The Respondents also invoke 8 U.S.C. § 1231(a)(1)(C) to contend that the original 90-day period of the Petitioner's detention may somehow be extended here. That provision provides that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Respondents do not explain why this provision applies here, given that the Petitioner's removal

period lapsed nineteen years ago without any attempt by DHS to extend it at that time.

The Respondents have also failed to demonstrate, in response to the Petitioner's allegations to the contrary, *see* ECF No. 1 ¶ 9, 39, his removal is significantly likely in the reasonably foreseeable future. Instead, the Respondents offer the threadbare assertion that "ICE has now arranged for his immediate removal from the country." ECF No. 4 at 4. But that assertion lacks any evidentiary support, and is in fact undermined by one of the Respondents' own exhibits, which instructs the Petitioner to "[a]pply for a travel document/passport" from Haiti, implying that such a document is not currently in ICE's custody.

Given the above, the Court concludes that ICE failed to comply with its own regulations in detaining the Petitioner, and that it consequently violated his rights under the Due Process Clause. The Court therefore GRANTS the Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1. Respondents are ORDERED to immediately release the Petitioner, subject to reasonable conditions of supervision.

IT IS SO ORDERED.

Mary S. McElroy

________________________________

Mary S. McElroy
United States District Judge

October 16, 2026